JAY WATSON,

                         **Plaintiff,**

    v.

LPP MORTGAGE, LTD.,

                         **Defendant.**

1:16-cv-00078

**TO:**    Martial A. Webster, Sr., Esq.
        Warren B. Cole, Esq.

## **MEMORANDUM OPINION**

THIS MATTER is before the Court upon LPP Mortgage Ltd.'s Motion for Summary Judgment (ECF No. 73).[1] Plaintiff filed an opposition to the motion (ECF No. 94), and Defendant filed a reply in support of its motion (ECF No. 95). Briefing is complete, and this motion is ripe for adjudication.

## **I.**    **FACTUAL BACKGROUND**

Based upon the record herein, the Court finds the following facts not in dispute.[2] Plaintiff desired to purchase certain real property described as 101 & 106 Grove Place and

---

[1] The undersigned issues this order pursuant to Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (ECF No. 22) executed by the parties, and the Order Referring Case to Magistrate Judge (ECF No. 23), entered by Chief Judge Wilma A. Lewis, on February 27. 2017.

[2] Plaintiff failed to comply with Local Rule 56.1 by not filing a statement of material facts as to which there is no genuine issue. *See* L.R.Ci. 56.1(a)(1). The Court does not look favorably upon failures to comply with applicable rules of procedure, and counsel for Plaintiff is advised accordingly. The Court will, however, exercise its discretion to proceed with the resolution of this matter. *See, e.g., Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) ("a district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules"); *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 923 (7th Cir.

7A Plessen. Plaintiff's desire was communicated as a "letter of intent" and submitted to Defendant, the then-"Seller" of the said property, upon Plaintiff's behalf by Calabash Real Estate. *See* Correspondence bearing the Calabash Real Estate letterhead, dated March 12, 2015, signed by Plaintiff, as "Buyer" (a copy of which is attached as Exhibit A to Plaintiff's Complaint (ECF No. 1-1)). This proposal was never accepted nor reduced to a written purchase agreement. Compl. at para. 9; Statement of Undisputed Material Facts in Support of Defendant LPP Mortgage Ltd.['s] Motion for Summary Judgment (ECF No. 74) (hereinafter SUMF) at para. 2. On or about July 21, 2015, Plaintiff submitted a second offer to purchase the subject property. Compl. at para. 10; SUMF at para. 3. This second offer was explicitly rejected by Defendant. Correspondence to Honnie Edwards, Calabash Real Estate, dated July 31, 2015, signed by Michael D. Wyant, on behalf of CLMG Corp., as servicer for LPP Mortgage Ltd. (a copy of which is attached as Exhibit C to SUMF (ECF No. 74-4)). The said correspondence contained purchase terms that would be presented to Defendant's "Committee" for review. *Id*. In short, the correspondence contained both a rejection of Plaintiff's July 21, 2015, offer and a counteroffer. Compl. at para. 14.[3] Nearly a year later, in or about June 2016, Defendant sent a written contract for Plaintiff's review. Compl. at para. 15, SUMF at para. 8 and Exhibit E (ECF No. 74-6). Plaintiff reviewed the

---

1994) (same); *M & T Mortgage Corp. v. White*, 736 F. Supp. 2d 538, 553 (E.D.N.Y. 2010) (court in its discretion may conduct review of, and rule based on, record where one party failed to file a statement of undisputed facts as required by local rules).

[3] Despite the fact that Plaintiff signed the proposed counteroffer, Compl. at Exhibit C, not only did he propose different terms, but also the original letter clearly states that the letter does not "constitute a binding commitment on the part of the Seller to proceed with the proposed sale of the subject property . . . ", *id*., and that necessary documents would drafted "to close this transaction." *Id*.

contract and made changes to some of the terms. Compl. at paras. 16-17, SUMF at para. 9. The contract was never finalized nor executed. Compl. at para. 18, SUMF at paras. 8, 10-11.

## II.     LEGAL STANDARD

A moving party will prevail on a motion for summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is deemed genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is on the moving party to prove that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations and footnote omitted). The court does not weigh evidence or decide issues of fact when determining whether there is any genuine issue for trial. *Anderson*, 477 U.S. at 248. Only those facts about which there is a "genuine" dispute must be viewed in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)) (*cited in Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). Moreover, Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

Defendant correctly summarizes contract law in the Virgin Islands. *See* Mot. at 3-5. As the Appellate Division of this Court has stated:

> The essential prerequisite for the creation of a valid contract is "a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." *Univ. of the V.I. v. Petersen-Springer* [sic], 232 F. Supp. 2d 462, 469 (D.V.I. App. Div. 2002). Where there is no mutual assent, or no meeting of the minds, there is no contract. *James v. Fitzpatrick*, 25 V.I. 124, 127 (Terr. Ct. 1990). Thus, a "reply to . . . [an] offer which purports to accept it but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counter-offer." *Castolenia v. Crafa*, No. ST-13-CV-243, 2014 WL 239427, at *2 (V.I. Super. Jan. 15, 2014).

*Davis v. Turner*, D.C. Civ. App. No. 2006-236, 2018 WL 4390716, at *4 (D.V.I. Sept. 14, 2018). Defendant's motion for summary judgment is grounded upon two bases: 1.) no valid contract was ever formed and 2.) any agreement between the parties for the sale of the property was not in writing and, consequently, is unenforceable by the operation of the statute of frauds.

### A. Breach of Contract

Plaintiff asserts that "[t]his action is brought for specific performance . . . ." Opp'n at 7. It is well settled that

> specific performance is available as a *remedy* for a breach of contract only if: (1) the terms of the contract are sufficiently certain; (2) no adequate remedy at law exists for the breach; (3) the party seeking relief has materially performed his obligations under the contract; and (4) the grant of such relief is not unfair, against public policy, or otherwise inequitable.

*David v. Scotland*, Case No. SX-13-CV-036, 2014 WL 11034925, at *3 (V.I. Feb. 3, 2014) (citing Restatement (Second) of Contracts §§ 357, 359, 362, 364, 369) (emphasis added). It goes without saying that before one can be entitled to a remedy for breach of contract, one first must prove that a contract was formed and, then, that the contract was breached.

In the matter at bar, the initial letter of intent sent by Calabash Real Estate upon Plaintiff's behalf to Defendant, by its own admission, did not constitute a "binding agreement and [was] only a proposal outlining the basic terms and conditions of purchase." Compl. at Exhibit A.

The second attempt by Plaintiff to purchase the subject property, the offer submitted on or about July 21, 2015, was explicitly rejected by Defendant. *See* SUMF at Exhibit C (wherein the first paragraph literally declares, "The offer is appreciated, but it is rejected"). While Defendant presented new terms and conditions to Plaintiff, the document plainly states:

> Please note that nothing contained herein shall constitute a commitment on the part of the Seller to proceed with the proposed sale of the subject property unless and until such time as the Seller has received approval from Seller's Loan Committee. If the Seller's Senior Load Committee approves the proposed offer, LPP will *draft the Seller documents needed to close this transaction*. The Seller's signature on the Deed of Sale represents the only way Seller is bound regarding this transaction.

Correspondence to Honnie Edwards, Calabash Real Estate, dated July 31, 2015, signed by Michael D. Wyant, on behalf of CLMG Corp., as servicer for LPP Mortgage Ltd. (a copy of which is attached as Exhibit C to SUMF (ECF No. 74-4)) at 2 (emphasis added). Again, this letter constitutes a counteroffer to Plaintiff's July 21, 2015, offer to purchase. In addition, the letter explains that it, the document, does not constitute the final agreement of the parties. The letter was reviewed and signed by Plaintiff before returning to Defendant; however, Plaintiff crossed through some terms and inserted other language that was different from the original. *See* Compl. at Exhibit C; SUMF at Exhibits C and D. Thus, the document Plaintiff returned to Defendant was yet another counteroffer. Plaintiff admits that his counteroffer was not accepted or executed. Compl. at para. 18. In the absence of "mutual assent," no contract exists. *Davis*, 2018 WL 4390716, at *4 (citations omitted). Despite Plaintiff's apparent belief that Defendant was obligated to accept his last counteroffer, Plaintiff offers no legal authority to support such a belief. In the absence of an offer and acceptance or mutual assent, no contract exists. Here, where Plaintiff's last counteroffer was not accepted, a contract was never formed. No contract; no breach of contract.[4] Consequently, Plaintiff is not entitled to any remedy for breach of contract.

---

[4] As Defendant notes in its Reply, the duty of "good faith and fair dealing" imposed by Restatement (Second) of Contracts Section 205, mentioned by Plaintiff in his Opposition (*see* Opp'n at 6), applies to the *performance* of a contract. Rep. at 5. Indeed, the quotation begun by Plaintiff says, such duty is imposed in the contract's "performance and its enforcement." Opp'n at 6. "Courts in the Virgin Islands have historically recognized four elements underlying a claim for breach of contract: (1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages." *Phillip v. Marsh-Monsanto*, S. Ct. No. 2015-0040, 2017 WL 2334248, at *4 (V.I. May 30, 2017) (citations omitted). As found by the Court herein, no contract was ever formed between Plaintiff and Defendant; thus, no breach of any duty, including a duty of good faith and fair dealing, could have occurred.

### B. Statute of Frauds

Assuming *arguendo* that a valid contract for the sale/purchase of real property exists in this matter, in order to enforce such a contract, Plaintiff must overcome the operation of the statute of frauds. In the Virgin Islands,

> [e]very contract for the leasing for a longer period than one year from the making thereof, or for the sale of any lands, or any interest in lands, shall be void unless the contract or some note or memorandum is in writing, and signed by the party to be charged, or by his lawful agent under written authority.

V.I. Code Ann., tit. 28, § 242. The Superior Court of the Virgin Islands has interpreted the statute of frauds as requiring "contracts for the sale of land or an interest in land to be in writing or evidenced by a note or memorandum and that the contract, note, or memorandum be signed by the party to be charged or his lawful agent under written authority." *Tyson v. Webster*, SX-14-CV-003, 2015 WL 13579630, at *4 (V.I. Nov. 12, 2015) (citing *Downing v. Fortuna Bay Estates*, 17 V.I. 20 (V.I. 1980) and V.I. Code Ann., tit. 28 §§ 241 and 242).

In the matter at bar, Plaintiff concedes that "[n]o contract had been signed by the parties . . . ." Opp'n at 6. Plaintiff then attempts to establish a *writing* with the exchange of emails between the parties. Opp'n at 7. It is true that courts have interpreted emails to constitute a *writing* to satisfy the statute of frauds requirement. *See, e.g.*, *J.B.B. Investment Partners, Ltd. v. Fair*, 182 Cal. Rptr. 3d 154 (Cal. Ct. App. 2014); *Donius v. Milligan*, No. 16

MISC 000277 HPS, 2016 WL 3926577 (Mass. Land Ct. 2016); *CAM Trust v. Revere High Yield Fund, LP*, DOCKET NO. A-1250-17T3, 2018 WL 5810296 (N.J. Super. Ct. App. Div. Nov. 7, 2018); *Newmark & Co. Real Estate Inc. v. 2615 East 17 Street Realty LLC,* N.Y.S. 2d 162 (N.Y. App. Div. 2011); *Stanley D. Bujnoch, Life Estate v. Copano Energy, LLC*, NUMBER 13-15-00621-CV, 2017 WL 6616741 (Tex. App. Dec. 28, 2017). *See also Mossman v. Moran*, No. Civ. 2004-31, 2004 WL 1664010 (D.V.I. June 1, 2004) (where this Court considered whether the exchange of telefaxes constituted a contract for the sale of land that would satisfy the Virgin Islands Statute of Frauds).

While the Court is assuming, for the purposes of the analysis in this section, that the terms of the contract are sufficiently identifiable from the emails and other documents submitted into evidence, the *writing* must bear the signature of "the party to be charged, or *by his lawful agent under written authority*." V.I. Code Ann., tit. 28, § 242 (emphasis added). The statute has been strictly construed. "[I]t is crystal clear that a land sales contract must be in writing and signed by the seller or his agent and that where the agent signs, he must have written authority to bind the seller." *John v. Christian*, 26 V.I. 129, 138 (V.I. 1991), *aff'd*, No. 0536-1988, 1993 WL 13748629 (D.V.I. Dec. 17, 1993), *aff'd*, 46 F. 3d 1117 (3d Cir. 1994). The *John* court applied the holding in *Downing v. Fortuna Bay Estates, Inc.*, 17 V.I. 20 (V.I. 1980), declaring, "The [*Downing*] Court made very clear that, even if an agent is authorized to sell real estate on behalf of his principal, section 241(a)(2) of the Statute of

Frauds requires that such authorization be in writing." *John*, 26 V.I. at 138 (citing *Downing*, 17 V.I. at 25).

The facts of *John* and *Downing* are similar to the facts at bar. In *John*, the plaintiff negotiated to purchase real property through the defendant, who represented himself as seller's agent. However, the purchase agreement, signed by the defendant as seller's agent, was found to be unenforceable by the court because "the contract of sale executed by Christian was a nullity because Christian's authority was not in writing." *John*, 26 V.I. at 139.

Likewise, in *Downing*, the plaintiff sought to enforce a contract for the purchase of real property that was embodied in a "written memorandum." *Downing*, 17 V.I. at 25. The property was owned by the defendant. The "memorandum" was "signed by John S. Bensen, but there is no indication of the capacity in which Bensen signed." *Id*. The court explains:

> [I]f Bensen was the defendant corporation's properly authorized agent when he signed the July 27, 1967 memorandum, the agreement would be enforceable if it satisfied other legal requirements. In order for Bensen to be considered as a properly authorized agent for Fortuna Bay Estates in this instance, the statute of frauds requires that he have such authorization in writing. 28 V.I.C. § 241(a)(2). Here, however, even assuming that Bensen was acting as agent for the defendant, the court cannot find that he was an agent under any written authority as required by the statute of frauds. The plaintiff failed to produce any written authorization for Bensen to act as agent for the defendant.

*Id*. In the matter at bar, it is undisputed that Defendant, LPP Mortgage, Ltd., owned the subject property. Compl. at para. 3; SUMF at para. 1. Plaintiff has failed to produce any

written authorization for Michael Wyant to act as agent for LPP Mortgage, Ltd., for the sale of the property.

Thus, even if specific terms could be supplied by the various offers and counteroffers, the authority of Mr. Wyant to close the sale is not apparent in any of the documents provided nor does Plaintiff offer any proof of such authority. In fact, Mr. Wyant references "management" in three separate emails. *See*, e.g., Electronic mail message dated July 26, 2016, from Michael Wyant to Jay Watson (a copy of which is attached to SUMF as Exhibit F (ECF No. 74-7)); Electronic mail message dated August 2, 2016, from Michael Wyant to Jay Watson (a copy of which is attached to SUMF as Exhibit G (ECF No. 74-8)); Electronic mail message dated August 9, 2016, from Michael Wyant to Jay Watson (a copy of which is attached to SUMF as Exhibit G (ECF No. 74-8)). Mr. Wyant also testified at his oral deposition that any terms of sale were required to be submitted to a "senior loan committee for approval." Transcript of Oral Deposition of Michael Wyant, taken September 11, 2018, at 16 (a copy of which is Attachment #3 to Plaintiff's Opposition (ECF No. 94-3)). Such approval also was communicated in the proposed contract contained in the correspondence to Honnie Edwards, Calabash Real Estate, dated July 31, 2015, signed by Michael D. Wyant, on behalf of CLMG Corp., as servicer for LPP Mortgage Ltd. (a copy of which is attached as Exhibit C to SUMF (ECF No. 74-4)).

As the Supreme Court has declared, the party opposing a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the

material facts." *Matsushita*, 475 U.S. at 586. Here, the material facts are not in dispute: the alleged contract between Plaintiff and Defendant was never finalized into a complete, written document, and the email exchange between Plaintiff and Mr. Wyant cannot be construed as a *writing* sufficient to defeat the operation of the defense of the statute of frauds because of the lack of proof of written authority from Defendant to Mr. Wyant to sell the property at issue.

### C. Part Performance

Plaintiff also attempts, as the Court understands the argument, to claim part performance, which would take "the agreement out of the statute of frauds." *Tyson*, 2015 WL 13579630, at *4 (citing *Henderson v. Resevic,* 262 F. Supp. 36, 38 (D.V.I. 1967)). According to the *Tyson* court:

> Under the doctrine of part-performance, "[o]ne who has permitted another to perform acts or expend large amounts of money on the faith of a parol agreement, or who accepts the benefits of the other's part performance, or for which the party performing cannot be adequately compensated in damages, is not permitted to assert the statute of frauds to invalidate the agreement."

*Tyson*, 2015 WL 13579630, at *4 (citing *Henderson v. Resevic,* 262 F. Supp. 36, 38 (D.V.I. 1967)). To be entitled to apply the doctrine of part performance, Plaintiff

> must establish three things. First, [he] must show clear evidence of the subject matter of the oral agreement between the parties. *Henderson,* 262 F. Supp. at 39. Second, [he] must establish that after the oral agreement, the party seeking to avoid the contract acted in a manner amounting to a representation that [it] proposed to honor the oral agreement and not avail [it]self of the statute of frauds to escape its performance. *Id.* (citing 73 Am. Jur. 2d *Statute of Frauds* § 405 (1974)). Finally, [Plainitff] must show that

>> [he] relied on the other party's representation, either in performance or pursuance of the contract, so that [he] would incur an "unjust and unconscientious injury and loss" if the avoiding party is allowed to rely on a statute of frauds defense. *In re Estate of Felix Pitterson,* 40 V.I. 13, 17 (Terr. Ct. 1998).

*Sylvester v. Frydenhoj Estates Corp.*, 47 V.I. 720, 725 (D.V.I. 2006).

Here, the Court accepts, for the purposes of this motion, that Plaintiff can show that the subject matter of the agreement was the sale/purchase of real property identified as 101 & 106 Grove Place and 7A Plessen and, thus, fulfill the first part of the part performance test.

However, Plaintiff has not met, nor can he meet, the second prong of the test. Contrary to representing that it would in fact sell Plaintiff the subject property, Defendant, through Mr. Wyant, repeatedly communicated to Plaintiff that a sale would not occur absent the fulfillment of certain conditions precedent. *See*, *e.g.*, Correspondence to Honnie Edwards, Calabash Real Estate, dated July 31, 2015, signed by Michael D. Wyant, on behalf of CLMG Corp., as service for LPP Mortgage Ltd. (a copy of which is attached as Exhibit C to SUMF (ECF No. 74-4)) (which specifically states that the letter does not "constitute a binding commitment on the part of the Seller to proceed with the proposed sale of the subject property . . . " and that necessary documents would be drafted "to close this transaction"); Declaration of Michael Wyant in Support of LPP Mortgage Ltd.'s Motion for Summary Judgment (a copy of which is Attachment #1 to SUMF (ECF No. 74-1)), at para. 10 (which states that Plaintiff was asked to provide a loan commitment letter that was

necessary to close the sale); Electronic mail message dated July 26, 2016, from Michael Wyant to Jay Watson (a copy of which is attached as Exhibit F to SUMF (ECF No. 74-7)) (in which Plaintiff is asked to "submit a Loan Approval Letter . . . that shows you: 1) either have the funds in your account and they are available to you or 2) that you are eligible for a loan in the amount you are seeking and that the *request can be submitted timely and funded to the Seller by the scheduled closing date in the contract*") (emphasis added); Opp'n at 3 (where Plaintiff declares that Defendant "admits there were errors on [sic] the proposed contract that needed correction[,] but never made the corrections or send [sic] the correct [sic] proposed contract to Plaintiff"). Moreover, nothing in the record shows that Defendant promised to close the sale without a final, written contract.

Further, Plaintiff cannot show that he relied on Defendant's alleged representations and incurred an "unjust and unconscientious injury and loss" if the statute of frauds were to be applied. *In re Estate of Felix Pitterson,* 40 V.I. 13, 18 (V.I. 1998) (citations omitted). Plaintiff asserts that "Defendant and its agents had Plaintiff seek out a loan from GERS . . . . Plaintiff relied on this promise to his detriment by making an application for loan with GERS and subjecting himself to the loan process." Opp'n at 6. Plaintiff's characterization of his part performance as "making an application for loan with GERS and subjecting himself to the loan process" is a gross exaggeration of the acts undertaken by Plaintiff.

In his oral deposition, taken April 26, 2018, Plaintiff acknowledged that Defendant requested "a loan approval letter or something similar from GERS, showing one, either you

have the funds in your account, or two, your eligible for a loan." Transcript of Oral Deposition of Jay Thomas Watson, taken April 26, 2018, at 83. Plaintiff admitted that he never submitted the requested documentation. *Id*. at 83-85. Plaintiff's efforts extended only to have "contacted Mr. Nibbs from GERS regarding" the request. Electronic mail message dated August 16, 2016, from Jay Watson to Michael Wyant (a copy of which is Attachment # 5 to Plaintiff's Opposition (ECF No. 94-5)); *see also* Transcript of Oral Deposition of Jay Thomas Watson, taken April 26, 2018, at 86-87 (where Plaintiff concedes that he told Mr. Wyant that he "had spoken to Mr. Nibbs . . . [but], . . . never [got] such a letter or document from Mr. Nibbs or GERS . . ."). Such "contact" or "speaking" cannot be construed to constitute "making an application for loan with GERS and subjecting himself to the loan process." Opp'n at 6. Moreover, the Court finds that no reasonable jury would find that such action, even if Plaintiff had actually applied for a loan, "'alter[ed] [Plaintiff's] position as to incur an unjust and unconscientious injury and loss' . . . ." *Henderson v. Resevic*, 6 V.I. 196, 200 (V.I. 1967) (quoting 49 Am. Jur. Statute of Frauds § 427). Based upon the foregoing, the Court finds that Plaintiff cannot avoid the application of the statute of frauds pursuant to the doctrine of part performance.

## IV. **CONCLUSION**

Having reviewed the briefs and other submissions of the parties and the record before it and viewing the undisputed material facts in the light most favorable to Plaintiff, for the reasons discussed hereinabove, the Court has determined that no genuine issue of

material fact exists, and Defendant is entitled to judgment as a matter of law.

Consequently, the Court will grant the motion and enter judgment in favor of Defendant.

An appropriate Order and Judgment accompanies this Memorandum Opinion.

                                                ENTER:

Dated: January 7, 2019                      /s/ George W. Cannon, Jr.
                                                            GEORGE W. CANNON, JR.
                                                             MAGISTRATE JUDGE